IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 09-cr-00517-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    GABRIELLA TINA VALLONE,

    Defendant.

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

The United States of America (the government), by and through James O. Hearty, Assistant United States Attorney for the District of Colorado, and the defendant, GABRIELLA TINA VALLONE, personally and by counsel, Pamela Mackey, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing, pursuant to D.C. COLO. LCrR 11.1.

### I. PLEA AGREEMENT

The defendant agrees to plead guilty to Count One of the Indictment which charges her with Assaulting a Flight Attendant in violation of 49 U.S.C. § 46504. The government agrees that: 1) the defendant should receive full credit for acceptance of responsibility under § 3E1.1 without further application to the Court; 2) it will recommend pursuant to Fed.R.Cr.P. 11(c)(1)(B), that the defendant be sentenced to a

COURT EX. 1

term of probation; 3) it will move to dismiss Count 2 of the indictment at sentencing; and 4) it will not object to the defendant's request that she be allowed to serve her sentence of Probation in New York. The defendant agrees to restitution which is estimated to be $4,148 to Virgin America Airlines.

## II. ELEMENTS OF THE OFFENSE

*49 U.S.C. § 46504:*

*First:* the defendant knowingly assaulted or intimidated a flight crew member or flight attendant;

*Second:* interfered with the performance of the duties of the member or attendant or lessened the ability of the member or attendant to perform those duties; and

*Third:* on an aircraft in the special aircraft jurisdiction of the United States.

## III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 49 U.S.C. § 46504 is: not more than 20 years imprisonment; not more than a $250,000 fine, or both; not more than three years of supervised release; a $100 special assessment fee; plus restitution.

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

A violation of the conditions of probation or supervised release may result in a separate prison sentence.

## IV. STIPULATION OF FACTUAL BASIS AND FACTS

## RELEVANT TO SENTENCING

The parties agree that there is no dispute as to the material elements which establish a factual basis of the offense of conviction.

Pertinent facts are set out below in order to provide a factual basis of the plea and to provide facts which the parties believe are relevant, pursuant to §1B1.3, for computing the appropriate guideline range. To the extent the parties disagree about the facts relevant to sentencing, the statement of facts identifies which facts are known to be in dispute at the time of the plea. (§6B1.4(b))

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which are relevant to the advisory guideline computation (§1B1.3) or to sentencing in general (§1B1.4). Nor is the Court or Probation precluded from the consideration of such facts. In "determining the factual basis for the sentence, the Court will consider the stipulation [of the parties], together with the results of the pre-sentence investigation, and any other relevant information." (§6B1.4 Comm.)

The parties agree that the government's evidence would show that the date on which conduct relevant to the offense (§ 1B1.3) began is February 2009.

The parties agree that the government's evidence would be:

On February 23, 2009, the defendant was a passenger on board Virgin America Flight 523 which had departed from Los Angeles International Airport (LAX) and was in route to John F. Kennedy International Airport in New York. The flight took off from LAX at approximately 9:50 pm and the defendant was seated in Seat 2F in the first class cabin. There were 139 passengers and five crew members on board the flight. The defendant was served a couple of alcoholic drinks and was later observed taking another alcoholic drink from the drink-cart. The defendant got out of her seat and was observed stumbling about near the front of the plane. Flight attendants approached her and asked if she needed assistance and tried to help her back to her seat. She became very agitated and combative, resisting the flight attendants and screaming. The defendant continued to resist the flight attendants and kicked and punched a flight attendant with the initials B.W. The flight attendants then restrained the defendant's hands with restraints. While restraining her arms, she kicked a flight attendant with initials J.R.C. With the assistance of passengers, they removed the boots the defendant was wearing to protect themselves and then restrained her legs. The flight attendants then informed the pilots of the situation and they decided to divert the flight and land at the nearest suitable airport which was Denver International Airport. The pilots did a rapid descent to Denver and after landing Denver Police Officers boarded the plane and took the defendant off the plane while she was still kicking and screaming. After diverting, the flight landed in

Denver at 12:51 am on February 24, 2009; left Denver at 2:30 am; and arrived in New York at 8:08 am – a little more than 2 hours after the scheduled arrival.

## V. SENTENCING COMPUTATION

Any estimation by the parties regarding the estimated appropriate guideline application does not preclude either party from asking the Court to depart from the otherwise appropriate guideline range at sentencing, if that party believes that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the sentencing guidelines. (§ 5K2.0)

The parties understand that the Court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the Court is not bound by any position of the parties. (§6B1.4(d)) The Court is free, pursuant to §§6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information. (§6B1.4 Comm.; §1B1.4) The guideline set forth below is simply the parties' best estimate and the government is not bound by the calculation if the probation department determines a different advisory guideline range applies.

To the extent the parties disagree about the sentencing factors, the computations below identify the factors which are in dispute. (§6B1.4(b)).

The 2009 Edition of the Sentencing Guidelines is applicable to this case.

A. The base guideline is § 2A5.2 which references § 2A2.3 because a minor assault occurred. Therefore, because the assault involved physical contact, the base offense level is 7.

B. Specific offense characteristics: Because it does not appear that any victim suffered "bodily injury" as that term is defined in § 1B1.1, Application Note 1(B)[1], there are no specific offense characteristics.

C. There are no: 1) role in the offense, 2)victim-related, or 3) obstruction adjustments.

D. The adjusted offense level would therefore be 7.

E. The defendant should receive a 2-level adjustment for acceptance of responsibility. The resulting offense level would therefore be 5.

F. The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court. Based on information currently known to the government, the defendant's estimated criminal history category is a I.

G. Assuming the (tentative) criminal history facts of F above, the career offender/criminal livelihood/armed career criminal adjustments would not apply.

---

[1]The offense level is to be increased by two levels if the victim sustained "bodily injury." USSG § 2A2.3(b)(1)(A). "'Bodily injury' means any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." USSG § 1B1.1 cmt. n.1(B).

H.   The guideline range resulting from the estimated offense levels of 5 and the (tentative) criminal history category of I above, is 0 - 6 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level 8 above could conceivably result in a range from 0 months (bottom of Category I), to 15 months (top of Category VI).

I.   Pursuant to guideline §5E1.2, assuming the estimated offense level of 8 above, the fine range for this offense would be $250 to $5,000, plus applicable interest and penalties.

J.   Pursuant to guideline §5D1.2, if the Court imposes the term of supervised release, that term shall be at least 2 years and not more than 3 years.

K.   Restitution is estimated to be $4,148.

## VI. WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

The parties believe the proposed plea agreement is appropriate because all relevant conduct is disclosed, the sentencing guidelines have been taken into account, and the charge to which the defendant has agreed to plead guilty adequately reflects the seriousness of the actual offense behavior.

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 04/09/10 _____
                GABRIELLA TINA VALLONE
                Defendant

Date: 4/9/2010 _____
                PAMELA MACKEY
                Attorney for Defendant

Date: 4/26/10 _____
                JAMES O. HEARTY
                Assistant U.S. Attorney

8